ctrlD









                NO.
12-06-00401-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

CHAD W. MEDLOCK,         §          APPEAL
FROM THE 241ST

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          SMITH
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Chad Medlock
appeals from his conviction for aggravated assault.  In two issues, he argues that the evidence
was factually insufficient to sustain the conviction and that the sentence is
grossly disproportionate.  The State did
not file a brief.  We affirm. 

 

Background

            On
July 9, 2006, Pam Medlock was asleep on her bed when she awoke to Appellant
straddling her back.  Appellant was her
husband, although they were separated at the time.  Appellant was angry, and he put a knife to
her neck.  The knife cut her on her neck
behind her ear.  Appellant said, “Bitch,
I told you.  So you got a boyfriend,
huh?  I come [sic] here to kill you.”  Pam begged for her life, told him to remember
her boys, whom he treated as his own children, and told him she had to go to
the bathroom.  He refused, and she soiled
herself.  Appellant then let her get up
and go to the bathroom, but he followed her and took her cellular telephone. 








            Appellant
began reviewing the call logs on her telephone and asked her if one of the
names listed was the name of her boyfriend. 
She tried to explain, but he grabbed her hair and moved her into the
hallway.  There, Appellant began swinging
the knife around and cut the wall in several places.  He stabbed the wall with the knife, and then
to show her how sharp the knife was, Appellant cut his shirt off with it and
then cut a piece of paper.  Pam tried to
bargain with Appellant, offering to reconcile, and then agreeing to have sex
with him.  This alleviated the immediate
problem, and Appellant helped her iron her clothes so she could go to work.

            Pam
went to work.  She was shaken, and her
supervisor and another coworker convinced her to leave work and to make a
police report.  She reported the incident
to the police, who began an investigation. 
The police went to the home and found Appellant, naked and asleep in
bed, with an open knife laying nearby. 
Pam showed the police some of her hair that had been pulled out and the
cut piece of paper, the cut shirt, and the cuts to the wall.  The police arrested Appellant.

            A
Smith County grand jury indicted Appellant for the felony offense of aggravated
assault.  The grand jury further alleged
that he used a deadly weapon, and that he had been previously convicted of a
felony offense.  Appellant pleaded not
guilty, and a jury trial was held.  The
jury found Appellant guilty as charged. 
Appellant pleaded “true” to the enhancement paragraph of the
indictment.  The State introduced
evidence to show that Appellant had twice before been convicted of felony
offenses, and the jury assessed punishment of forty years of imprisonment.  This appeal followed.

Factual
Sufficiency of the Evidence

            In
his first issue, Appellant argues that the evidence was factually insufficient
to support his conviction.  

Analysis

            We
review the factual sufficiency of the evidence to determine whether,
considering all the evidence in a neutral light, the evidence supporting the
conviction is too weak to withstand scrutiny or the great weight and
preponderance of the evidence contradicts the jury’s verdict to the extent that
the verdict is clearly wrong and manifestly unjust.  See Watson v. State, 204 S.W.3d
404, 414–15, 417 (Tex. Crim. App. 2006). 
In doing so, we must first assume that the evidence is legally
sufficient under the Jackson v. Virginia[1] standard.  See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).  We then
consider all of the evidence that tends to prove the existence of the elemental
fact in dispute and compare it to the evidence that tends to disprove that
fact.  See Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  

            Our
role is that of appellate review, and the fact finder is the judge of the
weight and credibility of a witness’s testimony.  Wesbrook v. State, 29 S.W.3d
103, 111–12 (Tex. Crim. App. 2000).  The
fact finder may choose to believe all, some, or none of a witness’s testimony.  Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986).  When we
review the factual sufficiency of the evidence, we are authorized to disagree
with the jury’s determination, even if probative evidence exists that supports
the verdict.  See Clewis,
922 S.W.2d at 133.  But our evaluation
should not substantially intrude upon the jury’s role as the judge of the
weight and credibility of witness testimony. 
See Santellan, 939 S.W.2d at 164. 

            As
charged, the State was required to prove that Appellant intentionally or
knowingly caused or threatened to cause bodily injury to another and used or
exhibited a deadly weapon.  Tex. Penal Code Ann. § 22.02(a)(2)
(Vernon 2006).

Analysis

            Appellant does not argue that a
specific element was not proved.  Rather,
he argues broadly that the complaining witness’s testimony should not be
believed because her testimony “wholly def[ies] logic.”  Specifically, he asserts that it makes no
sense that a woman would be intimate with a person who had just threatened to
kill her and that a man who threatens to kill a woman would not have sex with
her and then iron her clothes for work. 
Appellant then suggests that this court “can readily see other parts of
[her] testimony which defy logic and are probably then, not true,” and that her
testimony does not “ring true.”  Finally,
Appellant lists a number of facts that he contends suggest she was lying.  They include her desire to be out of a “bad
marriage,” her agreement to talk to Appellant after work, the fact that her
report to the police was not immediate, and the fact that Appellant gave her
phone back.

            We
agree with Appellant that the jury could have considered these arguments in
reaching their decision.  But we are not
persuaded that the jury’s resolution of these issues was unreasonable.  The complaining witness offered a compelling
rationale for agreeing to have sex with Appellant, that she was seeking to
preserve her physical safety.  Her report
to the police followed only a short delay, and her claim was corroborated by
substantial physical evidence.  The jury’s
verdict meant they found the complaining witness to be credible.  The verdict is not contradicted by the great
weight and preponderance of the evidence, nor are we convinced that the verdict
is clearly wrong or represents a manifest injustice.  We overrule Appellant’s first issue.

 

Cruel and
Unusual Punishment

            In
his second issue, Appellant contends that the assessed sentence constituted
cruel and unusual punishment under both the Texas and United States
constitutions.  Initially, we note that
Appellant made no objection to the trial court raising the issue of cruel and
unusual punishment and has, therefore, waived appellate consideration of this
issue.  See Rhoades v. State,
934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver with regard to rights under
the Texas Constitution); Curry v. State, 910 S.W.2d 490, 497
(Tex. Crim. App. 1995) (waiver with regard to rights under the United States
Constitution); Tex. R. App. P.
33.1.  However, even absent waiver, we
conclude that Appellant's sentence did not constitute cruel and unusual
punishment.

            The
legislature is vested with the power to define crimes and prescribe
penalties.  See Davis v. State,
905 S.W.2d 655, 664 (Tex. App.–Texarkana 1995, pet. ref’d); see also Simmons
v. State, 944 S.W.2d 11, 15 (Tex. App.–Tyler 1996, pet. ref’d).  Punishment that falls within the limits
prescribed by a valid statute is not excessive, cruel, or unusual.  See Harris v. State, 656 S.W.2d
481, 486 (Tex. Crim. App. 1983); Jordan v. State, 495 S.W.2d 949,
952 (Tex. Crim. App. 1973); Davis, 905 S.W.2d at 664.  In the case at hand, Appellant was convicted
of aggravated assault.  Because the grand
jury alleged and the State proved that he had a prior felony conviction, the
range of punishment shifted from that of a second degree felony, for aggravated
assault with a deadly weapon, to that of a first degree felony.  See Tex.
Penal Code Ann. § 22.02(b), 12.42(b) (Vernon 2006).  The punishment range for such an offense is
between five and ninety–nine years of imprisonment, or life imprisonment.  See Tex.
Penal Code Ann. § 12.32(a) (Vernon 2006).  Here, the punishment assessed by the jury
falls within the range set forth by the legislature.  Id.  Therefore, the punishment is not cruel,
unusual, or excessive per se.

            Under
Solem v. Helm, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637
(1983), a disproportionate sentence within the range of punishment can violate
the Eighth Amendment.  The
proportionality of a sentence is evaluated by considering (1) the gravity of
the offense and the harshness of the penalty, (2) the sentences imposed on
other criminals in the same jurisdiction, and (3) the sentences imposed for
commission of the same crime in other jurisdictions.  Solem, 463 U.S. at 292, 103 S.
Ct. at 3011.[2]  The
application of the Solem test has been modified by Texas courts
and the Fifth Circuit Court of Appeals in light of the Supreme Court’s decision
in Harmelin to require a threshold determination that the sentence
is grossly disproportionate to the crime before addressing the remaining
elements.  See, e.g., McGruder,
954 F.2d 313 at 316; see also Jackson v. State, 989 S.W.2d 842,
845-46 (Tex. App.–Texarkana 1999, no pet.).

            In
determining whether Appellant’s sentence is grossly disproportionate, we are
guided by the holding in Rummel v. Estelle, 445 U.S. 263, 100 S.
Ct. 1133, 63 L. Ed. 2d 382 (1980).[3] 
In Rummel, the Supreme Court addressed the proportionality
claim of an appellant who had received a mandatory life sentence under a prior
version of the Texas habitual offender statute for a conviction of obtaining
$120.75 by false pretenses because he had two prior felony convictions, also
minor property crimes.  Id.,
445 U.S. at 266, 100 S. Ct. at 1134–35. 
After recognizing the legislative prerogative to classify offenses as
felonies and, further, considering the purpose of the habitual offender
statute, the court determined that the appellant’s mandatory life sentence did
not constitute cruel and unusual punishment. 
Id., 445 U.S. at 285, 100 S. Ct. at 1145.

            In
the case at hand, the offense committed by Appellant––he assaulted a sleeping
woman with a knife—was far more serious than any of the offenses committed by
the appellant in Rummel. Furthermore, Appellant had twice before
been convicted of felony offenses, had a term of community supervision revoked,
and served time in the penitentiary.  And
Appellant’s forty year sentence is less severe than the life sentence upheld by
the Supreme Court in Rummel. 
Thus, it follows that if the sentence in Rummel was not
unconstitutionally disproportionate, then neither is the sentence assessed
against Appellant in this case.  Because
the threshold test has not been satisfied, we need not apply the remaining
elements of the Solem test. 
Appellant’s second issue is overruled.

Disposition

            Having
overruled Appellant’s two issues, we affirm the judgment of the
trial court.

 

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion
delivered October 11, 2007.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] Jackson v. Virginia, 443 U.S.
307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)





[2] The strict application of the Solem
test has been questioned since the Supreme Court rendered its opinion in Harmelin
v. Michigan, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836
(1991).  See Simmons, 944
S.W.2d at 15. 





[3] The Fifth Circuit has referred to Rummel
as a “handy guide” for proportionality review. 
See McGruder, 954 F.2d at 317.